The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Ford. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives or otherwise to reverse the Deputy Commissioner.
* * * * * * * * * * *
The Full Commission finds as facts and concludes as matters of law the following which were entered into by the parties as:
STIPULATIONS
1. On December 28, 1992, the parties were bound by and subject to the North Carolina Workers' Compensation Act.
2. On said date the employer-employee relationship existed between the parties.
3. On said date the defendant was a duly qualified self-insurer under the provisions of the North Carolina Workers' Compensation Act.
4. The alleged injury giving rise to the plaintiff's claim occurred on December 28, 1992.
5. On said date plaintiff was earning an average weekly wage of $188.72.
6. The parties further stipulated into evidence the following documents:
a. Industrial Commission Form 18;
b. Industrial Commission Form 22;
 c. Recorded statement of plaintiff taken by Jerry Peebles on February 1, 1993;
d. Medical records from Dr. Elbert Rudisill;
e. Medical records from Dr. Mark McGinnis;
f. Medical records from Dr. E. Brown Crosby;
 g. Deposition of Dr. E. Brown Crosby dated March 28, 1994.
7. That the issues to be determined in this case are:
 a. Did plaintiff sustain an injury by accident arising out of and in the course of her employment with the defendant-employer on December 28, 1992?; and,
 b. If so, are the injuries of which the plaintiff complains caused by said accident?; and,
 c. If so, to what compensation, if any, is plaintiff entitled under the Act?
* * * * * * * * * * *
The Full Commission adopts with modifications, the findings of fact of the Deputy Commissioner as follows:
FINDINGS OF FACT
1. Plaintiff was born on February 18, 1946. She worked for defendant-employer as a Certified Nursing Assistant (CNA). A CNA goes to homebound clients and renders assistance to meet the clients needs, such as light housekeeping, preparing meals, and assisting with personal needs.
2. In her training as a CNA plaintiff was taught how to lift patients. In her work, she would need to lift patients up in their bed or chair or from the floor.
3. On or about December 28, 1992, plaintiff was working for the defendant in the home of Daisy Gilliam, a 90 year old woman who was somewhat feeble. Ms. Gilliam used a walker and plaintiff assisted her. Plaintiff helped Ms. Gilliam to the den and into her recliner. Ms. Gilliam began sliding down in the chair, and as plaintiff was lifting up Ms. Gilliam, plaintiff felt and heard a pop in her left arm and it started hurting. Plaintiff was lifting the patient in the way she had been trained.
4. On the afternoon of the incident, plaintiff reported to her supervisor Karen Walden that the patient had slipped down in the recliner and that she was pulling the patient up when she felt a pop in her left wrist. At the hearing, plaintiff testified that the patient kept sliding down and went limp about three times. She had not previously mentioned the patient going limp. Regardless of the inconsistencies in plaintiff's statements about what happened on the day of the incident, the greater weight of the evidence fails to show an interruption of plaintiff's normal work routine. Since the defendant's company serviced homebound clients, they expected to render assistance with walking or sitting up to feeble persons such as Ms. Gilliam. Plaintiff was trained to assist patients and to lift them up in a chair or bed, and this was an expected part of her normal work routine. On the day this occurred, plaintiff was lifting the patient in accordance with procedure, and as part of her normal day to day duties.
5. Plaintiff was seen by Dr. Elbert Rudisill on December 29, 1992 at which time she related to Dr. Rudisill that she was injured when she lifted a patient and felt something pop in her left wrist. Dr. Rudisill's impression was tendonitis of the left wrist and he took plaintiff out of work for two days, and treated her conservatively with medication.
6. When plaintiff's complaints continued into February, 1994, Dr. Rudisill referred her to Dr. Mark McGinnis, an orthopaedic surgeon whom she first saw on February 24, 1993. Dr. McGinnis' impression was probable tendonitis of the ulnar wrist extensor and flexor with a possible TFCC tear and left carpal tunnel syndrome. He treated plaintiff with anti-inflammatory medication, steroid injections and splint immobilization. The records do not indicate that Dr. McGinnis authorized plaintiff to remain out of work.
7. On July 27, 1993, plaintiff was examined by Dr. E. Brown Crosby of the Asheville Hand Center on referral of her attorney. Dr. Crosby's initial impression was carpal tunnel syndrome, left. Over the course of her treatment, he decided that plaintiff has tenosynovitis of the left wrist. On October 19, 1993 Dr. Crosby found plaintiff was at maximum medical improvement with a five percent permanent disability of her left hand.
* * * * * * * * * * *
Based upon the findings of fact, the Full Commission concludes as follows:
CONCLUSION OF LAW
1. Plaintiff has failed to establish by the greater weight of the evidence that on or about December 28, 1992 she sustained an injury by accident arising out of and in the course of her employment with defendant. The evidence shows that there was no interruption of plaintiff's usual work routine and that the activity that she engaged in was performed in the usual manner. N.C.G.S. § 97-2(6).
* * * * * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
AWARD
1. Plaintiff's claim for compensation and benefits under the North Carolina Workers' Compensation Act must be, and the same is hereby DENIED.
2. Each side shall bear its own cost.
 S/ _________________ KIM L. CRAMER DEPUTY COMMISSIONER
CONCURRING:
S/ _________________ LAURA K. MAVRETIC COMMISSIONER
DISSENTING:
S/ _________________ BERNADINE S. BALLANCE COMMISSIONER